REDMANN, Judge
(concurring).
I subscribe to the majority opinion but would add the following.
Act 189 of 1910 seems to be verbatim identical, insofar as pertinent here, to Act 52 of 1904, in both title and body (and earlier Oyster Statutes are largely similar). Thus I believe whatever effect the 1895 document executed only by the Register of State Lands may have had towards placing color of title of navigable coastal water bottoms in the Levee District, that effect was taken away as a matter of law by Act 52 of 1904 (if not earlier), long before the State Auditor attempted in the 1910 document to supply his signature “nunc pro tunc”. In the Duck Lake case, Humble Oil and Rfg. Co. v. State Mineral Board, 223 La. 47, 64 So.2d 839 (1953), at least the District may have had color of title. Here the 1904 and 1910 Acts transferred all coastal water bottoms back to the State, thus removing even the color of title to any navigable such bottoms the District may have had.
Additionally, I believe the judgment appealed from should also be affirmed because the operation of Act 215 of 1908 takes the District-to-private-ownership link out of the scope of Act 62 of 1912.
Act 215 of 1908 by clear implication repealed those provisions of section 11 of Act 14 of 1892 which authorized the Lake Borgne Levee District to sell its lands (in its own name) in such manner as it thought proper, and to deposit sale proceeds in the State Treasury to the District’s own credit. The 1908 Act provided the exclusive method for the sale of public lands “belonging to the State of Louisiana, or to any of the levee boards thereof”, limited the size of tracts to quarter sections, provided for Sheriff’s sale and for “a patent signed by the Register, or the President of the Levee Board, as the case may be, and the Governor of the State”. The Act obliged the Sheriff to forward the proceeds of sales to the State Treasurer but not for the credit of the Levee District as formerly specified in the Acts creating the Levee Districts. Section 7 of the 1908 Act specifically authorized the Presidents of the Levee Boards to recover authorized expenses of the sale, by application to and on warrant of the Governor, thus making it evident that the net proceeds were not available to the respective Levee Boards.
In fact the documents signed by the President of the Levee District and by the Governor in the present case recite Act 215 of 1908 as their authority, and are titled, in the margin, “Recording Patent by State of Louisiana to Plaquemines Land Co.” and in the body as a heading are titled “State of Louisiana- Patent No. 59” (and 60).
In my opinion the actual effect of Act 215 of 1908 was to take away from the Levee Districts their power to transfer lands to private owners, and to provide that all public lands should thereafter be sold and patented by the State, with the net proceeds accruing directly to the State. The 1908 act did not elect to revoke earlier grants to the Levee Districts, see State ex rel. Atchafalaya Basin Levee Bd. v. Capdervielle, 142 La. 111, 76 So. 327 (1917); but it did provide the “Governor” (in whom as such the “supreme executive power of the State" was vested, La.Const.1898, art. 62) had to execute a “patent” in order to accomplish the sale of District lands thereafter. The circumstance that in some cases the various Levee Districts might have title had no effect other than to sub *651 stitute the President of the Board of Commissioners of the Levee District in place of the Register as the ministerial officer who would handle the prescribed routine for sale prior to the patent being executed by the Governor.
I believe these 1911 title links are what they purport to be, namely patents from the State, and not being signed by the Register of the State Land Office (nor, as far as appears, recorded in that office), do not enjoy the protection of Act 62 of 1912. And these links are null, since Act 189 of 1910 expressly prohibited the alienation of coastal water bottoms.
One further point argued by plaintiffs bears mention. Although the 1911 patents did convey the surface area of Stone Island to the then high water mark, to the extent natural causes of subsidence and erosion may have reduced the land area and covered it with navigable water, nature has deprived plaintiffs of their former title and returned it to the State, Miami Corp. v. State, 186 La. 784, 173 So. 315 (1936).
I therefore, while fully agreeing with the majority, respectfully add this concurring opinion.